RECORD NO. 13-4212

In The

# United States Court of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## STANLEY D. PARTMAN, a/k/a Goat,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AT COLUMBIA

————————

## BRIEF OF APPELLANT

————————

C. Fredric Marcinak, III
SMITH MOORE LEATHERWOOD, LLP
Post Office Box 87
Greenville, South Carolina  29602
(864) 240-2491

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF APPELLATE JURISDICTION ................................... 1

STATEMENT OF THE ISSUES ON APPEAL ....................................... 1

STATEMENT OF THE CASE ............................................................ 1

STATEMENT OF THE FACTS ......................................................... 2

SUMMARY OF THE ARGUMENTS .................................................. 4

ARGUMENT AND CITATION OF AUTHORITY ................................. 5

    I.    Appellant's conviction for violating 18 U.S.C. Section 924(c) must be reversed because the Government did not meet its burden of proving, beyond a reasonable doubt, that Appellant possessed a firearm in furtherance of a drug crime ........................... 5

        A.    Standard of Review ................................................... 5

        B.    Discussion ............................................................... 6

    II.    The District Court erred in denying Appellant's Motion for a New Trial because one juror remembered that the Appellant wore orange pants on the day of jury selection, yet was still seated as a juror, which destroyed the presumption of innocence ...... 11

        A.    Standard of Review .................................................. 11

        B.    Discussion .............................................................. 11

III.   The Trial Court judge erred in applying the U.S.S.G. § 3C1.1 enhancement for obstruction of justice because the Appellant did not obstruct or impede trial and because the trial court judge did not specifically find that Appellant willfully obstructed justice ...............................................................................13

   A.   Standard of Review .................................................13

   B.   Discussion ..............................................................13

CONCLUSION .......................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**CASES**</u>

*Coffin v. United States*,
    156 U.S. 432 (1895)........................................................................11

*Estelle v. Williams*,
    425 U.S. 501 (1976)........................................................................11

*Gall v. United States*,
    552 U.S. 38 (2007).........................................................................13

*Jackson v. Virginia*,
    443 U.S. 307 (1979).....................................................................4, 5

*Turner v. Louisia*,
    379 U.S. 466 (1965)........................................................................11

*United States v. Brown*,
    321 F.3d 347 (2d Cir. 2003) ..........................................................16

*United States v. Dunnigan*,
    507 U.S. 87 (1993).........................................................................14

*United States v. Lomax*,
    293 F.3d 701 (4th Cir. 2002) ...............................................6, 9, 10

*United States v. McDade*,
    399 Fed. Appx. 520 (11th Cir. 2010) ............................................16

*United States v. Reed*,
    49 F.3d 895 (2d Cir. 1995) ............................................................14

*United States v. Rinick*,
    219 Fed. Appx. 238 (3d Cir. 2007) ...............................................14

*United States v. Smith*,
  451 F.3d 209 (4th Cir. 2006) ...................................................................5, 11

*United States v. Turner*,
  324 F.3d 456 (6th Cir. 2003) .......................................................................16

*United States. v. Woodard*,
  239 F.3d 159 (2d Cir. 2001) ........................................................................16

## CONSTITUTIONAL PROVISION

U.S. Const. amend. XIV ........................................................................12

## STATUTES

18 U.S.C. § 2 .........................................................................................2

18 U.S.C. § 924(c) .........................................................................*passim*

18 U.S.C. § 3231 .....................................................................................1

21 U.S.C. § 841(a)(1) .............................................................................2

21 U.S.C. § 841(b)(1)(C) ........................................................................2

21 U.S.C. § 843(b) ...................................................................................2

21 U.S.C. § 846.........................................................................................1

28 U.S.C. § 1291 .....................................................................................1

## GUIDELINE

U.S.S.G. § 3C1.1.....................................................................................13

## STATEMENT OF APPELLATE JURISDICTION

The District Court's subject matter jurisdiction derived from 18 U.S.C. § 3231. The judgment entered against Appellant in this case is a final judgment that disposes of all claims against Appellant. This Court's jurisdiction to review the Judgment derives from 28 U.S.C. § 1291. Judgment was entered on March 15, 2013 and the Notice of Appeal of Final Judgment was timely filed on March 15, 2013.

## STATEMENT OF THE ISSUES ON APPEAL

I.    Was the evidence at trial insufficient to show that Appellant made use of a firearm in furtherance of drug dealing activity?

II.   Was the presumption of innocence destroyed when one member of Appellant's jury remembered Appellate in incriminating attire from the day of the jury selection?

III.  Did the trial court err by failing to make specific findings concerning whether Appellant willfully obstructed justice?

## STATEMENT OF THE CASE

On September 19, 2012, a grand jury returned a Second Superseding Bill of Indictment. (J.A. 683.) In Count One, Appellant was charged with knowingly and intentionally conspiring to unlawfully possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. (J.A. 683.) In Count Two, Appellant

was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (J.A. 684.) In Counts Thirty-Seven and Seventy-One, Appellant was charged with using a communication facility to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.  (J.A. 684.) In Count 70, Appellant was charged with possession of a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c). Appellant was convicted on all counts at trial on November 29, 2012. (J.A. 685.)

A Presentence Investigation Report ("PSR") was filed. (J.A. 817.) The PSR calculated Appellant's criminal history as Category Two and an offense level of Forty. (J.A. 817.) Thus, the guideline range for imprisonment was 324 to 405 months, plus a consecutive term of imprisonment of 60 months as to Count Seventy.

On March 15, 2013, Appellate was sentenced to 396 months in prison.

## STATEMENT OF THE FACTS

The government alleges that Stanley Partman was involved in a drug dealing operation that spanned from 1996 to 2011. (J.A. 822.) Two incidents occurred, in 2007 and 2011 respectively, which led to Partman's arrest on September 13, 2011. (J.A. 516.) The government built a case against Partman using court authorized

interception of wire communications and historical evidence supported by government witnesses. (J.A. 822.)

The 2007 incident occurred on January 16, 2007 when officers were observing Partman in connection with a tip that Partman would be delivering drugs to the Apple Valley subdivision. (J.A. 824.) Officers observed suspicious behavior and saw Partman enter his vehicle and drive to the high crime area. (J.A. 824.) One officer activated his blue lights, Partman did not pull over, and eventually Partman began evading officers on foot. (J.A. 824.) Officers later detained Partman with the assistance of a K-9 unit dog. (J.A. 824.)

The 2011 incident occurred after the government began investigating Donnay James Rikard in March 2011. (J.A. 826.)  From that investigation, the government began to suspect that Rikard supplied Partman with cocaine and crack cocaine. (J.A. 826.) The government intercepted a telephone call between Rikard and Partman, which evidenced that another man, Rondeal Woods, allegedly sold Partman bad cocaine. (J.A. 826.) Because Woods worked at a barber shop, Partman went in the barber shop on one occasion in order to find out Wood's address. Partman and Rikard discussed the deal and the trip to the barber shop on the telephone call, during which Partman expressed frustration with Woods. (J.A. 827.) At one point in the conversation, Partman stated, "I done got my chopper in the truck with me right now." (J.A. 828.) Rikard testified that chopper meant a

firearm. (J.A. 828.) Finally, one witness testified pursuant to a proffer agreement that he had seen several guns inside Partman's home in 1997, 14 years before the 2011 incident at the barber shop. (J.A. 830.)

Prior to his arrest, Partman suffered a traumatic childhood. Dr. Thomas Martin, a court appointed psychiatrist, discovered that Partman was sexually abused as a child. (J.A. 814.) In addition, Partman had an "adjustment disorder with anxiety features," as well as a clear history of traits associated with a personality disorder. During his trial, Partman was examined by Dr. Martin and the court held a hearing to find him competent to stand trial.

<u>**SUMMARY OF THE ARGUMENTS**</u>

The evidence against Appellant was legally insufficient to establish guilt beyond a reasonable doubt under the *Jackson v. Virginia* standard on the 924(c) charge of possessing a firearm **in furtherance** of a drug trafficking crime. The only thing that the Government established was alleged possession of a gun for a vague period of time that spanned multiple months. The Government did not show that Appellant's possession of the gun **furthered** any particular crime.

Furthermore, Appellant did not receive a fair trial because the presumption of innocence was destroyed when Appellant was forced to wear prison clothes in front of the jury at trial. The destruction of the presumption of innocence

4

undoubtedly prejudiced Appellant because one juror actually remembered Appellant's prison clothes, yet was still seated on the jury.

Additionally, the court erred when it enhanced Appellant's sentence for obstruction of justice because the court failed to find with specificity that Appellant **willfully** obstructed justice. At most, Appellant accidentally delayed proceedings for a few minutes due to his confusion with the judicial process. The delay was brief and unintentional.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.    Appellant's conviction for violating 18 U.S.C. Section 924(c) must be reversed because the Government did not meet its burden of proving, beyond a reasonable doubt, that Appellant possessed a firearm in furtherance of a drug crime.**

### A.    Standard of Review

An appellate court reviews the denial of a motion for a judgment of acquittal *de novo*. *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006).

In analyzing the sufficiency of the evidence, an appellate court must determine whether the record evidence could support a finding of guilt beyond a reasonable doubt in a light most favorable to the plaintiff. *Jackson v. Virginia*, 443 U.S. 307, 318–319 (1979). The verdict of a jury should be sustained if the verdict is supported by "substantial evidence." *Smith*, 451 F.3d at 216. Evidence is considered substantial when the evidence is adequate and sufficient to support a conclusion of guilt by a reasonable finder of fact. *Id.*

5

**B.    Discussion**

A person who, "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than five years . . . ." 18 U.S.C. § 924(c) (2006). In order to determine whether a person carried a firearm in furtherance of a drug trafficking crime, this Court has articulated many factors for the fact finder to consider. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). The factors include "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.*

At trial, the government offered insufficient evidence for a reasonable finder of fact to conclude that Appellant possessed a gun in furtherance of drug activity. The Government maintained that Appellant had visited Woods at a barber shop in order to harm Woods for an alleged bad drug deal in 2011. (J.A. 830.) Furthermore, the Government suspected that Appellant had gone into the barber shop multiple times in order to find Woods. (J.A. 830.) It is during this vague time frame that the Government contends Appellant possessed a gun in furtherance of drug activity. (J.A. 830.) However, even during the intercepted call between

6

Appellant and Rikard, Appellant stated that he went into the barber shop only once. (J.A. 827.) The Government did not have a witness testify that Appellant visited the barber shop more than once. Although the Appellant admitted that he owned a gun during a period of time, the prosecution itself admitted that Appellant had "adamantly denied from the beginning that he took a firearm into the barber shop." (J.A. 838.) Furthermore, the witness who testified that she had seen Appellant come into the barber shop testified that she had seen Appellant on only one occasion and she testified that she did not see a gun. (J.A. 390.) No other witness testified that he or she saw Appellant with a gun in the barber shop. Therefore, the government was unable to offer *any* evidence that Appellant possessed a gun when he went to the barber shop.

Having failed to prove Appellant possessed a gun in the barber shop, the Government attempted to show that Appellant had a gun during a vague period of time around the time Appellant went into the barber shop. The 2011 incident that was the basis of Count One of Appellant's conviction happened a week before the incident in the barber shop. Presumably, the Government attempted to allege that Appellant possessed a gun over a period of time in order to connect the drug activity with the barber shop. However, the Government must do more than simply write a span of time on Appellant's indictment. The trial judge even stated that he had never seen a gun count that covered a period of time instead of a particular

instance. (J.A. 283.) To meet the legal requirement of the statute, the Government is required to show that Appellant possessed a gun at a particular time and the possession of that gun furthered a crime. The Government failed to do so in this case.

The only evidence of the gun possession is Appellant's statement to Rikard that Appellant had a gun in the car, which was mere puffery. Appellant maintains that he did not have a gun in the car. However, even if Appellant did have a gun in the car, it would not be illegal. Appellant was not a felon and mere gun possession is not a crime. Instead, the gun must be used **to further** other illegal activity.  In addition, although Appellant did make a statement concerning gun possession on an audio tape, the audio tapes in this case were questionable. On one tape, Appellant began making an exculpatory statement, but as soon as he made the statement, the audio tape cut out. (J.A. 38.) Appellant won a motion to have the audio tapes reviewed by an audio expert, (J.A. 34), but the record does not reflect that the examination ever took place. Appellant maintains that the examination never took place and therefore the jury did not get the entire picture concerning the gun possession.

Notwithstanding the above, even if the Government could prove that there was a gun in the car, no evidence was presented to the jury to explain how the gun *furthered* the crime. Evidence was offered that addressed Appellant's ownership of

the gun, but ownership alone does not satisfy the requirements of an 18 U.S.C. § 924(c) charge. *See* 18 U.S.C. § 924(c) (2006). There are three elements the Government must prove to satisfy a § 924(c) charge: (1) possession of a gun; (2) that possession furthered a crime; and (3) defendant was engaged or was about to engage in a crime. *See id.* The Government focused on the third element and barely addressed the first. However, proving two elements is insufficient to charge Appellant. Appellant was already charged with the crime of possession with intent to distribute illicit drugs. The Government cannot seek to simply add five years to his sentence because Appellant *may* have *legally* possessed a gun during a vague period of time that happened to be around the time of a crime. Instead, the Government was required to show that the gun furthered the crime. That is the crux of a § 924(c) charge. Instead of focusing on the main issue of the charge, the Government completely failed to provide any evidence that the alleged gun possession furthered a crime.

This Court has strictly enforced the Government's obligation to comply with § 924(c) by meeting its burden of proving that a gun was used in furtherance of a drug crime. For example, in *Lomax*, this Court held that in order to show that a defendant's gun possession furthered a crime, the Government must give the jury enough evidence to satisfy certain factors. 293 F.3d at 705. Many of the factors that a jury may take into consideration could not be considered in this case because

the jury was simply not provided the information to answer the pertinent questions. For instance, the jury could not know if the gun was even loaded or how far away the gun was from Appellant when he went into the barber shop. In addition, the Government did not address whether the gun was stolen or illegitimately possessed. Furthermore, the gun was never found and therefore the jury could not analyze the time and circumstances of how the gun was found. Finally, and most importantly, the jury could not have analyzed the type of drug activity that was being conducted in relation to possession of the gun because no drug activity was being conducted. Therefore, the *Lomax* factors could not possibly have been found by the jury, because the jury was never presented with evidence that supported any of the *Lomax* factors.

Without evidence that Appellant possessed a gun at a certain time, the fact that Appellant owned a gun during a general time frame is not enough to establish the requirements of a 924(c) violation. The Government not only failed to offer substantial evidence, the Government failed to offer *any* evidence necessary to charge Appellant under § 924(c). Because the Government could not prove any particular instance in which Appellant used a firearm to further criminal activity, the Government did not meet its burden of proof. Therefore, the conviction on Count 70 and the resulting mandatory 60 months consecutive sentence for the 924(c) charge were erroneous and the trial court should have granted Appellant's

motion of acquittal as to that charge. Accordingly, this Court should reverse Appellant's 924(c) conviction and the resulting 60 months consecutive sentence.

## II. The District Court erred in denying Appellant's Motion for a New Trial because one juror remembered that the Appellant wore orange pants on the day of jury selection, yet was still seated as a juror, which destroyed the presumption of innocence.

### A. Standard of Review

The denial of a motion for new trial is reviewed *de novo*. *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006).

### B. Discussion

The Supreme Court has long held that the presumption of innocence lies at the foundation of the administration of criminal law. *Coffin v. United States*, 156 U.S. 432, 453 (1895). In order to protect that fundamental presumption, the Court has held that an accused must not be compelled to attend his or her trial in prison clothes. *Estelle v. Williams*, 425 U.S. 501, 504 (1976). In *Estelle*, the Supreme Court stated, "This is a recognition that the constant reminder of the accused condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented . . . ." *Id.* at 504–505 (citing *Turner v. Louisia*, 379 U.S. 466, 473 (1965)).

11

The Appellant, through no fault of his own, attended the jury selection in prison clothes. (J.A. 688). The Supreme Court has held that such a presentation constitutes a violation of the Fourteenth Amendment. *See id.* at 404.

In addition, this Court is assured that the jurors were influenced by the sighting of the Appellant in prison clothes because multiple jurors remembered seeing the Appellant in prison clothes, and one juror was seated after remembering incriminating facts about the defendant. (J.A. 140.) That juror remembered that the defendant was wearing something orange, which is generally a color associated with prison attire. In reality, Appellant's prison attire was red. The fact that the juror remembered a color connoted with prison shows that the juror formed an impression during jury selection that stayed with her until the trial and likely hindered her ability to be impartial. Such an impression destroys the presumption of innocence and results in a violation of the Appellant's Fourteenth Amendment rights.

The presiding judge did not sufficiently question the juror to ascertain whether or not the juror had formed a negative opinion about the Appellant's attire at jury selection, nor did the judge instruct the jury to disregard what they saw. (J.A.149-50.) Other jury members who distinctly recalled the prison attire were replaced with alternates, but there were not enough alternate jury members to replace the juror who remembered the orange clothing. (J.A. 150-51.) Presumably,

the judge would have also have replaced the juror with an alternate juror if there were another alternate available because having an impartial jury is foundational to any court proceeding. Despite the court's good intentions, the jury in Appellant's trial was not impartial because the presumption of innocence was destroyed before the trial even began.

**III.    The Trial Court judge erred in applying the U.S.S.G. § 3C1.1 enhancement for obstruction of justice because the Appellant did not obstruct or impede trial and because the trial court judge did not specifically find that Appellant willfully obstructed justice.**

### A.    Standard of Review

Appellate courts review all sentences under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* at 50.

### B.    Discussion

The Federal Sentencing Guidelines allow a court to increase a defendant's offense level by two levels "[i]f the defendant willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense . . . ." U.S.S.G. § 3C1.1.

The trial court judge maintained that Appellant obstructed justice in certain instances in the courtroom, but the record reflects that the judicial process was still

13

carried out. Justice would have been served in this case without the two level enhancement for obstruction. Appellant maintains that the record reflects only two interruptions in the courtroom, not three, and both instances were short-lived. In both situations, the court proceedings continued immediately upon resolution. In addition, discussion concerning the situations only lasted a few minutes. Therefore, it is unreasonable to apply a two level enhancement for obstruction of justice when the instances were short and easily resolved. Under those circumstances, a two level enhancement for obstruction is inappropriate.

Furthermore, the two level enhancement for obstruction of justice is generally used only in cases where justice was actually prevented. For example, an obstruction enhancement is appropriate when the defendant fails to show up for his proceedings and, therefore, the proceedings cannot continue. *United States v. Reed*, 49 F.3d 895, 900 (2d Cir. 1995). Similarly, an obstruction enhancement is appropriate when a defendant is proved to have perjured himself or herself on the stand in his or her proceeding. *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). Furthermore, an obstruction enhancement is appropriate when the defendant searches out and threatens to kill cooperating witnesses. *United States v. Rinick*, 219 Fed. Appx. 238, 240 (3d Cir. 2007). Those examples represent instances when justice actually cannot be done because the defendant is knowingly and willfully delaying or preventing the administration of justice. The instances that form

Appellant's enhancement do not rise to the level of obstruction. Appellant could not have prevented justice because he was tried and sentenced in a timely manner. In addition, there was no delay to the proceedings here.

Furthermore, even if Appellant somehow obstructed justice, the obstruction was not willful because his intent was not to obstruct justice when he acted. Instead, he sought only to inform the jury of relevant facts about his case. Instead of obstructing justice, Appellant was attempting to smooth the administration of justice in order to paint a more accurate depiction of the events surrounding his arrest. The record indicates that Appellant did not fully understand that he was not allowed to speak at trial. It is understandable that defendants are confused by their inability to speak in their own defense; especially defendants who are not familiar with the court system. Appellant faced such a phenomenon at his trial.

As Appellant understood the trial, he and his attorney would work together to present a cohesive defense. Instead, Appellant was forced to take a backseat when "[his] life was on the line." (J.A. 677.) That situation is counterintuitive. Appellant had high stakes in the trial, and wanting to inform the court of the facts was a natural reaction to a highly stressful environment. In addition, the circumstances were exacerbated because Appellant suffers from a nervous condition that makes him very anxious in stressful situations. (J.A. 712 Testimony

of Dr. Martin.)  His reactions to a confusing court system were natural for a person in his condition and his remarks did not delay the proceedings to a serious degree.

Several courts have held that if a defendant lacks the mental wherewithal to willfully obstruct justice, then an enhancement for obstruction of justice is not applicable to that defendant. *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2003); *United States v. McDade*, 399 Fed. Appx. 520, 524 (11th Cir. 2010). Courts have held that obstruction of justice enhancements are only appropriate if "the district court makes a finding that the defendant had the specific intent to obstruct justice." *United States v. Brown*, 321 F.3d 347 (2d Cir. 2003) (quoting *United States. v. Woodard*, 239 F.3d 159, 161 (2d Cir. 2001)). Therefore, courts must specifically address whether or not a defendant's actions were willful.

The trial judge did not address whether or not Appellant's actions were a **willful** obstruction of justice. In making its determination for obstruction of justice, the court simply stated, "I find that the defendant obstructed or impeded or attempted to obstruct or impede the administration of justice . . . ." (J.A. 730.) The court went on to list Appellant's various instances of misconduct, which were admittedly present throughout the trial. (J.A. 730-31.) However, the court did not state whether or not it thought the conduct of the defendant was willful. (*See* J.A. 730-31.) Therefore, the court failed to make specific findings regarding whether Appellant's conduct was willful.

16

By not even considering how Appellant willfully obstructed justice, the court abused its discretion in considering guideline determinations. Accordingly, this Court should vacate Appellant's sentence and remand for resentencing without the obstruction of justice enhancement.

## <u>CONCLUSION</u>

For these reasons, Appellant requests that this Court reverse his conviction and sentence for carrying a firearm in furtherance of a drug crime in violation of § 924(c) and vacate his remaining convictions and sentences and remand for re-trial on the remaining counts of the indictment or, alternatively, that the Court vacate his sentence and remand for resentencing.

Respectfully submitted,

/s/ C. Fredric Marcinak, III
C. Fredric Marcinak, III
SMITH MOORE LEATHERWOOD, LLP
Post Office Box 87
Greenville, South Carolina  29602
(864) 240-2491

*Counsel for Appellant*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,936*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>August 26, 2013</u>          <u>/s/ C. Fredric Marcinak, III</u>
                                                  *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 26th day of August, 2013, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Robert F. Daley, Jr.
> OFFICE OF THE U.S. ATTORNEY
> 1441 Main Street, Suite 500
> Columbia, South Carolina  29201
> (803) 929-3054
>
> *Counsel for Appellee*

I further certify that on this 26th day of August, 2013, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ C. Fredric Marcinak, III
*Counsel for Appellant*